## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 05-366 (JGP) |
| v. | Judge John G. Penn |
| DARICK NAPPER,<br>        Defendant. | Hearing Date: February 9, 2006 |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to defendant's Motion to Suppress Evidence. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

**I.      FACTS**

The defendant has been charged in a four-count indictment with (1) Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); (2) Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a); (3) Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1); and (4) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

The government would expect the evidence at a motion hearing to show that on August 4, 2005, at approximately 2:20 p.m., plain-clothed members of the Metropolitan Police Department's Drug Interdiction Unit were conducting interviews at the Greyhound Bus Station, located at 1005

First Street, Northeast, Washington, D.C.[1] Officers observed a person later identified as defendant Darick Napper, exit a newly-arrived bus, and without entering the station, walk around the outside of the station. The officers thought this peculiar because from their observation and experience, passengers usually enter the bus station upon their arrival. One of the plain-clothed officers, Erick Alvarado, approached defendant, and in a conversational tone, identified himself as an officer and asked to speak with defendant. Defendant stopped and agreed to talk with the officer. During their subsequent conversation, Officer Alvarado explained the mission of the Drug Interdiction Unit and asked for permission to search the bag defendant was carrying. Defendant replied, "Yeah," and handed his bag to the officer. By this time, a second plain-clothed officer, Dino McFadden, had arrived and continued speaking with defendant, while Officer Alvarado searched defendant's bag. During the search, Officer Alvarado discovered a box of ammunition. He then gave a code word to Officer McFadden, alerting Officer McFadden to arrest defendant. While reaching for defendant, Officer McFadden felt a gun in defendant's waistband and informed Officer Alvarado that defendant had a gun on his person. At that point, Officer Alvarado assisted Officer McFadden in placing defendant under arrest. Subsequent to defendant's arrest, the officers searched him and recovered (1) a Ruger .9 mm semi-automatic pistol with nine rounds of .380 caliber ammunition in the chamber and one round in the chamber in his waistband; (2) a canvass holster with a magazine containing ten rounds of .9 mm ammunition in his waistband; (3) two medium bags, one containing 31 small ziplocks of a rock like substance, and the other containing 12 small ziplocks of a rock like substance

---

[1] These interviews consisted of the officers approaching passengers and other civilians, and asking to speak with them. If the passenger or civilian agreed to speak with the officers, the officers would engage the person in a brief conversation and might ask for permission to search the person's belongings for contraband.

in defendant's left cargo pants pocket; (4) one ziplock bag containing a plant material, which later field tested positive for THC; and (5) $591.72 from defendant's left front pants pocket and (6) four rounds of .9 mm ammunition from defendant's right front pants pocket. The search of defendant's bag uncovered (1) a High Point .380 caliber pistol with eight rounds in the magazine; (2) a box containing 37 rounds of .9 mm ammunition; (3) one body armor vest; (4) a digital scale; (5) 23 small ziplock bags and (6) two black masks.

## II.    ARGUMENT

Defendant is now moving to suppress the evidence seized from him. As an initial matter, defendant claims that the police subjected him to invalid Terry[2] stop. Second, he argues that the police had no probable cause to arrest him, and thus the search incident to his arrest was unlawful. Alternatively, defendant contends that the search of his bag and his person was illegal because he never consented to those searches. Defendant's arguments should be rejected. First, the initial encounter between defendant and the officers was consensual. Second, the officers asked for and defendant gave his consent for the officers to search his bag. Finally, upon discovering the box of ammunition in the bag, the officers had probable cause to arrest defendant and search him.

### A.    Defendant's Initial Encounter with Officer Alvarado Was Consensual.

As the Supreme Court stated in Florida v. Bostick, 501 U.S. 429, 434 (1991), "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Indeed, the encounter is no more than a consensual contact as "long as a reasonable person would feel free to disregard the police and go about his business." California v. Hodari D., 492 U.S. 621,

---

[2]    Terry v. Ohio, 392 U.S. 1 (1968).

628 (1991). For a consensual encounter, law enforcement officers do not even need a reasonable suspicion. Bostick, 501 U.S. at 434. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. (internal quotations omitted). To determine when police conduct crosses from a consensual encounter to a seizure, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Id. at 437. In doing this analysis, courts look at such factors as the time of day, the place, the numbers of officers present, whether they were uniformed, whether any commands were given, what tone of voice was used in giving the commands, whether the individual was touched, whether the individual was threatened or physically intimidated, and whether the officers' blocked the individual's path. U.S. v. Jones, 374 F. Supp. 2d 143, 148 (D.D.C. 2005).

In the instant case, the officers' initial encounter with defendant was consensual. Indeed, in the early afternoon at 2:20 p.m., one plain-clothed officer approached defendant in a public place and asked to speak with defendant. Defendant stopped and he and the officer had a conversation. During that conversation, Officer Alvarado spoke in a conversational tone, never displayed his weapon or touched defendant. The officer did not threaten defendant nor was he physically intimidating. Further, Officer Alvarado did nothing to block defendant's path. Accordingly, this initial contact clearly was consensual.

### B.     Defendant Consented to the Search of His Bag.

During his conversation with defendant, Officer Alvarado asked defendant whether he could search his bag. Defendant said, "Yeah," and handed his bag to Officer Alvarado. Defendant now claims that he did not voluntarily consent to the search of his bag. This argument lacks merit.

Police may search items without a warrant and without probable cause if given voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). To determine whether consent was voluntarily given, the Court must examine the totality of the circumstances to determine whether the defendant's "will has been overborne and his capacity for self-determination critically impaired." See Schneckloth, 412 U.S. at 225; Connelly, 479 U.S. at 167 (1986). In making this determination, a district court must examine "the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the [interaction]." Schneckloth, 412 U.S. at 226. Relevant factors include:  1) the age of the subject; 2) his or her lack of education or low intelligence; 3) the lack of any advice on the subject regarding constitutional rights; 4) the length of detention; 5) the repeated and prolonged nature of questioning; and 6) the use of physical punishment. Id. at 226-227.

The government expects that, if a hearing is held on this matter, the totality of circumstances would demonstrate that defendant's consent was voluntarily given. First, defendant's will was not overborne. Indeed, at the time of the offense, defendant was a twenty-three year old man, who had completed 10 years of education. During a brief conversation with a plain-clothed officer in a public place, defendant gave his consent to the search. He did so having some familiarity with the criminal justice system, having been arrested three times since 2001, having been convicted twice, and being on parole in one case and on pre-trial release in another case at the time he was speaking with the

officer. Further, the defendant identifies no coercive police activity, and the circumstances of defendant's consent do not suggest that it was the product of coercive police activity, or was in any other way involuntary.

### C.     The Officers had Probable Cause to Arrest Defendant.

The Fourth Amendment permits police to make warrantless arrests based upon probable cause for felonies committed in their presence. United States v. Watson, 423 U.S. 411, 417-418 (1976). Probable cause to arrest is viewed from the perspective of the police officer and it is a decision that is reviewed based upon the totality of the circumstances confronting the officer at the time of the events leading up to the arrest. Illinois v. Gates, 462 U.S. 213, 230-32 (1983). Probable cause exists where the arresting officer possesses information "sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense." Beck v. Ohio, 379 U.S. 89, 91, (1964); see also United States v. Green, 670 F.2d 1148, 1152 (D.C.Cir.1981). Upon discovering the ammunition in this case, the officers had probable cause to believe defendant had committed a crime because possession of ammunition is illegal in the District of Columbia. See D.C. Code §7.2506.01. Accordingly, they had probable cause to arrest defendant.

### D.     The Officers Lawfully Searched Defendant Incident to His Arrest.

After making a valid arrest, police may make a full search of the arrestee as well as the area under the arrestee's personal control at the time of the arrest. Chimel v. California, 395 U.S. 752, 763 (1969). A "search qualifies as incident to an arrest so long as it is an 'integral part' of the arrest." U.S. v. Tavolacci, 895 F.2d 1423, 1428 (D.C. Cir. 1990)(citation omitted). Such searches extend to "containers in hand or within reach when the arrest begins." Id. at 1429. In this case, the officers searched defendant's person only after he had been arrested. Indeed, upon finding the

ammunition, Officer Alvarado yelled out the code word, notifying Officer McFadden to place defendant under arrest. While grabbing defendant to handcuff him, Officer McFadden felt a gun. Officers did not search defendant's person, however, until after they had placed him under arrest. At that point, they recovered (1) a Ruger .9 mm semi-automatic pistol with nine rounds of .380 caliber ammunition in the chamber and one round in the chamber in defendant's waistband; (2) a canvass holster with a magazine containing ten rounds of .9 mm ammunition in his waistband; (3) two medium bags, one containing 31 small ziplocks of a rock like substance, and the other containing 12 small ziplocks of a rock like substance in defendant's left cargo pants pocket; (4) one ziplock bag containing a plant material; (5) $591.72 from defendant's left front pants pocket and (6) four rounds of .9 mm ammunition from defendant's right front pants pocket.

  The officers also continued their search of defendant's bag. This search was also incident to defendant's arrest because the bag had been in his hands just moments earlier and they completed the search only minutes after his arrest. During that continued search, they recovered (1) the box containing 37 rounds of .99 mm ammunition; (2) a High Point .380 caliber pistol with eight rounds in the magazine; (3) one body armor vest; (4) a digital scale; (5) 23 small ziplock bags and (6) two black masks.[3]

---

[3]   Additionally, the police officers lawfully continued their search of defendant's bag because he had never withdrawn his initial consent to search. See Burton v. United States, 657 A.2d 741 (D.C. 1994).

WHEREFORE, the United States respectfully submits that defendant's motion to suppress evidence should be denied.

>Respectfully submitted,
>KENNETH L. WAINSTEIN
>United States Attorney
>Bar No. 451058
>
>_____
>Denise M. Clark
>Assistant United States Attorney
>Major Crimes Section, D.C.  Bar No. 479149
>555 4th Street, N.W.  #4840
>Washington, DC 20004
>(202)353-8213; Fax: 353-9414