# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 05-366 (JGP) |
| v. | Judge John G. Penn |
| DARICK NAPPER,<br>           Defendant. | Hearing Date: April 21, 2006 |

## GOVERNMENT'S SUPPLEMENTAL RESPONSE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its response to the two cases defendant presented for the first time during the March 24, 2006 oral argument on his motion to suppress. The government relies upon the points and authorities set out in this memorandum and at the continuing motions hearing in this case.

**I.     FACTS**

1.     The defendant has been charged in a superceding indictment with (1) Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); (2) Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a); (3) Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1); (4) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); and (5) Conspiracy, in violation of 18 U.S.C. § 371.

2.     On February 9, 2006, this Court held a hearing on defendant's motion to suppress evidence. The government presented the testimony of Officer Erick Alvarado and Officer Dino McFadden. Both officers testified that on August 4, 2005 at approximately 2:20 p.m., they were conducting drug interdiction interviews at the Greyhound bus station located at 1005 First Street,

Northeast, Washington, D.C. (Tr. 5-6, 74-75, 87). Both wore plain clothes. (Tr. 7, 58, 74, 79, 87, 104). Officer McFadden observed defendant exit a bus and walk around the platform. (Tr. 8, 62, 75-76, 88-89). He directed Officer Alvarado's attention to defendant. (Tr. 63, 76, 78, 89). Officer Alvarado watched defendant walk around the platform and pass the smoking areas. (Tr. 9, 13, 15, 76, 78, 92-93).[1] Officer Alvarado exited the station and approached defendant. (Tr. 9, 78, 93). Officer McFadden followed Officer Alvarado out of the station. (Tr. 78, 93, 97). Officer Alvarado showed his police credentials to defendant, identified himself as a police officer, and asked to speak with defendant in the officer's normal conversational tone. (Tr. 15-16, 46-47, 66, 68-69, 78-79, 97). Defendant responded by saying yes. (Tr. 16, 47, 68, 78). Officer Alvarado asked defendant a series of questions, including whether defendant had just exited a bus, whether he was waiting for someone and where defendant lived. (Tr. 16-17, 47-48, 68-69, 78-79). Defendant answered these questions, but did not respond when asked why he was not waiting inside the station. (Tr. 16-17, 47-48). Officer Alvarado explained the mission of the Drug Interdiction Unit, asked if defendant was carrying contraband, and then asked permission to search the bag defendant was carrying. (Tr. 17, 50, 79-80). According to both Officer Alvarado and Officer McFadden, defendant stated, "Yeah," and handed the bag to Officer Alvarado (Tr. 17-18, 69, 80). While Officer Alvarado kneeled down in front of defendant and began searching the bag, Officer McFadden, in a conversational tone, identified himself as an officer, showed defendant his police credentials and began to ask some of the same questions Officer Alvarado had asked defendant. (Tr. 18, 25, 51-52, 80).

3. While Officer McFadden was speaking, Officer Alvarado found a box of ammunition under a layer of clothes (Tr. 18-19, 71). He gave a code word alerting Officer McFadden to arrest

---

[1] Neither officer saw defendant smoke that day. (Tr. 50, 76).

defendant and Officer McFadden "bearhugged" or placed his arms around defendant. (Tr. 19, 71, 80-81, 99-100). In doing so, Officer McFadden felt a gun in defendant's waistband and yelled out to Officer Alvarado, who assisted Officer McFadden in handcuffing defendant. (Tr. 19-20, 71, 80-82) Once defendant was handcuffed Officer McFadden pulled out a .9 mm Ruger loaded with 10 rounds of .380 ammunition from defendant's waistband (Tr. 19-20, 82). Officers also found a holster which contained a magazine with 10 rounds of .9 mm ammunition; 43 bags of crack cocaine; a bag of marijuana; and 4 rounds of .9 mm ammunition on defendant's person (Tr. 21). In the bag defendant had been carrying, the officers found a box containing 37 rounds of .9 mm ammunition; a High Point .380 semi-automatic pistol with 9 rounds of .380 ammunition; a bullet proof vest; a digital scale; and two ski masks.(Tr. 21-22).

  4.  On cross examination, Officer Alvarado testified that he and Officer McFadden reviewed the police paperwork in this case together. (Tr. 29-30). He believed it was the PD 81 and not the PD 163 (Tr. 30). Officer McFadden recalled asking Officer Alvarado questions about the police paperwork, and particularly a mistake he noticed on the PD 163 (Tr. 86-87, 105-106).[2]

  5.  Defendant, who admitted he was a D.C. resident, testified that on August 4, 2005, he was on a bus going from Baltimore, Maryland to Atlanta, Georgia. (Tr. 114, 131) He had a bus ticket bearing the name of Kim Keyes and was carrying a small carry-on bag. (Tr. 114-115). The bus had a layover in Washington, D.C. and defendant exited the bus during the layover (Tr. 115, 117). He walked past the first smoking area and went to the second smoking area. (Tr. 119). As Defendant smoked, Defendant saw the officers approaching. (Tr. 119-120). Officer Alvarado asked

---

[2] As stated during oral argument, it is the government's position that the evidence shows that, although Officers Alvarado and McFadden provided credible and consistent testimony on the material facts of the case.

to speak with defendant. (Tr. 120). On direct examination, defendant said he did not say anything to the officers in response to their request. (Tr. 120). On cross-examination, defendant admitted that he shook his head yes. (Tr. 137) Officer Alvarado, who was dressed in plain clothes, showed defendant identification and identified himself as an officer (Tr. 121, 135-136). Officer Alvarado asked defendant a series of questions to which defendant responded (Tr. 121-122, 138). At some point, Officer Alvarado asked to look in defendant's bag (Tr. 123). Defendant claimed he did not respond (Tr. 123, 142). According to defendant, the officer then reached for the bag as he gestured for defendant to hand the bag to him. (Tr. 123, 142). Defendant claimed he only turned over the bag because he felt he had no choice (Tr. 124, 142).

6.    In addition, during cross examination, defendant admitted that he had two separate tickets, one in the name of Kim Keyes and the other in the name of Thomas Cousar (Tr. 130). He claimed that those individuals bought the tickets for him (Tr. 130), but admitted he took the social security card and the pay stub of Thomas Cousar without Mr. Cousar's permission (Tr. 130-131). Defendant further testified that when Officer Alvarado found the box of ammunition the officer did not give a verbal signal, but instead nodded three times with his head to get Officer McFadden's attention. (Tr. 147-148).

II.    ARGUMENT

1.    During the oral argument on the motion to suppress, defendant for the first time submitted two cases – U.S. v. Worley, 193 F.3d 380 (6th Cir. 1999) and U.S. v. Gregory Stewart, 05-159 (PLF) – which defendant claims support his position that the evidence in this case should be suppressed. First, defendant appears to rely on Worley for the proposition that where a defendant simply acquiesces to a request to search, that acquiescence to authority is not the equivalent of

voluntary consent. The facts of the <u>Worley</u> case are clearly distinguishable from the facts of the case at hand.

    2.        In <u>Worley</u>, one of the officers patrolling at an airport noticed defendant, who had a distinctive appearance and who the officer believed he had seen at the airport on prior occasions. <u>U.S. v. Worley</u>, 193 F.3d 380, 382 (6th Cir. 1999). An hour later, the officer saw the defendant again, but noticed this time defendant was carrying a plastic bag with personal items and a Marriott bag which appeared to contain something heavy. <u>Id.</u> The officers approached defendant as he placed the bags in an airport locker. <u>Id.</u> They identified themselves and asked to speak with defendant. <u>Id.</u> Defendant agreed and produced a driver's license in response to their request. He also produced his ticket. <u>Id.</u> When asked about the ticket, defendant responded that a friend had purchased what he claimed to be a round-trip ticket. <u>Id</u>. The officer insisted that the ticket was a one-way ticket. The officer then asked about the Marriott bag defendant had stored. <u>Id.</u> Finally, he asked to look into the bag. Defendant responded by saying, "You've got the badge, I guess you can." <u>Id</u>. at 383. Based on the dispute over the ticket and defendant's response to the officer's search request, the trial court found that defendant's response was "not an unequivocal expression of free and voluntary consent. In fact, ... it was an expression of futility in resistance to authority." <u>Id</u>. at 384. Accordingly, the court suppressed the evidence and the circuit court affirmed. <u>Id</u>. at 387.

    3.        The case at hand is clearly distinguishable. First, unlike in <u>Worley</u>, the officers in this case did not confront defendant with any inconsistencies in his story. Indeed, even though defendant told Officer Alvarado that he lived in D.C. and later told Officer McFadden that it was his first time here, neither officer confronted him about his answers or even suggested to him that they knew he had changed his answer. (Tr. 17, 80, 97-98). Indeed, both men continued speaking with defendant

5

in a conversational manner and asked him different questions. Second, defendant did not respond equivocally to Officer Alvarado's search request as the defendant in Worley had. Instead, defendant said an unqualified "Yeah" and handed his bag to the officer. Defendant did so after agreeing to speak with the officers and then answering a series of their questions. Thus, by his words and actions he demonstrated his free and voluntary consent to the search.

    4.    Defendant has also submitted the case of U.S. v. Gregory Stewart, 05-159 (PLF) apparently for the purpose of discrediting Officer McFadden, who also testified as a government witness during the motions hearing in that case. In Stewart, Judge Friedman granted defendant's motion to suppress in that case because he found a conflict between the officer's and the defendant's respective accounts and because he found that a man of that defendant's maturity and sophistication would not logically consent to a search. However, Judge Friedman never specifically found that Officer McFadden's testimony was not credible. (Stewart Tr. 79-82). Moreover, the government submits that just as Judge Friedman made his own credibility findings based on the witnesses that appeared before him and the evidence he heard in that case, this Court should rely on its own assessment of the credibility of the officers and the defendant and the quality of the evidence presented in this case only in assessing the merits of defendant's motion. Further, the Stewart case is again clearly distinguishable from the case at hand.

    5.    In Stewart, the defendant was a forty-one year old man (Stewart Tr. 43). During that motions hearing, Officer McFadden testified that he approached Stewart, who he noticed was walking very slow and scanning the area, identified himself, asked defendant a few questions and ultimately asked and received Stewart's permission to check Stewart's bag. (Stewart Tr. 9-12). Upon finding nothing illegal in the bag, Officer McFadden asked if defendant had anything strapped to his

body. (Stewart Tr. 13-14, 34-37). Defendant lifted his shirt and said the officer could check (Stewart Tr. 14). During the subsequent pat down the officer felt a square object and pills in Stewart's back pocket. (Stewart Tr. 14-15). When the officer asked what was in his pocket, defendant pulled out his wallet (Stewart Tr. 16). The officer reached into the pocket and discover OxyContin pills (Stewart Tr. 16).

6.  In relevant part, Stewart's account differed as follows. He claimed that after Officer McFadden had initially spoken with him, Officer McFadden had allowed him to walk away and then called him back and asked to see defendant's bus ticket and identification, which the officer allegedly retained. The officer supposedly told defendant he was going to do a quick pat down of bag and did not obtain defendant's permission. (Tr. 50). After finding nothing in the bag, Officer McFadden allegedly informed defendant who was then going to do a pat down of defendant. (Tr. 52).

7.  The Stewart case is distinguishable. First, in the Stewart, there was simply nothing to corroborate the material aspects of either witness's version of events. Indeed, although there was a second officer, Sergeant Murphy, who was present during part of the search, both witnesses testified that he was not present during the entire encounter. (Stewart Tr. 13, 32). Further, Sergeant Murphy testified that he only approached defendant after Officer McFadden had begun searching defendant's bag, and that he might have stepped back after the search. (Tr. 60-61, 63). He was not asked nor did he testify about whether he heard any of the conversation between Officer McFadden and Stewart, much less whether he heard defendant Stewart consent to the pat down.

8.  In the case at hand, the testimony Officer McFadden provided is corroborated in all material respects by the testimony of Officer Alvarado. As both officers credibly and forthrightly testified, they both were present during the entirety of the exchange and each heard and saw what

the other officer said and did. Further, both officers heard defendant's responses and observed his actions. Indeed, even defendant admits that both men approached him, stood in close proximity to him and were present during the questioning, the search and the arrest.

WHEREFORE, the United States respectfully submits that defendant's motion to suppress evidence should be denied.

Respectfully submitted,
KENNETH L. WAINSTEIN
United States Attorney

Denise M. Clark
Assistant United States Attorney
Major Crimes Section, D.C. Bar No. 479149
555 4th Street, N.W. #4840
Washington, DC 20004
(202) 353-8213; Fax: 353-9414