IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Case No. 05-366 (JCP) |
| ) | |
| DARRICK NAPPER ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT NAPPER'S RESPONSE TO GOVERNEMENT'S SUPPLEMENTAL REESPONSE

*COMES NOW* Darrick Napper, through undersigned counsel and hereby responds to the government's supplemental response. Mr. Napper hereby incorporates all previous arguments put forth during the oral argument on the motion and raises and highlights the following to respond to the government's filing.

I.   **Application of** *United States v. Worley*

The government although not disagreeing with the legal analysis in *United States v. Worley*, 193 F.3d 380 (6th Cir. 1999), asserts that the facts of the case at hand are dissimilar to those presented in *Worley* and hence *Worley* should not apply to this case.

Although, the facts may not be exactly similar, they still result in the same conclusion as in the *Worley* case that Mr. Napper merely acquiesced to plain clothes officers' authority rather than giving his voluntary consent to search his bag when asked. Therefore, valid consent was not obtained in this case either. The facts of this case clearly show that the defendant's response to Officer Alvarado's request to search his bag

1

like the defendant in *Worley*, was "an expression of futility in resistance to authority." *Worley, supra* at 384. Mr. Napper testified that he believed that he would have been arrested had he not complied with the officer's request. (Tr. 152-153). Mr. Napper did not answer "yes" when asked by Officer Alvarado if he could search his bag, instead his actions of handing over his bag were equivocal in nature. His actions were "not an unequivocal expression of free and voluntary consent." *Worley, supra* at 384.

Prior to Officer Alvarado asking to search Mr. Napper's bag, Officer Alvardo approached Mr. Napper, showed him his police credentials and asked him several questions. (Tr. 15-16) Mr. Napper was told that the officers were looking for guns and contraband, just the items that Mr. Napper had in his bag. (Tr.153) Mr. Napper was also aware that he was surrounded by not only one officer, Officer Alvarado, but by a second officer, Officer McFadden. (Tr. 123). He had one officer in front of him and one behind him. It was in this context that Mr. Napper's will was overborne.

At no time did the officers let up on him. He was not advised that he could leave, that he did not have to talk with the officers and respond to their questions nor that he did not have to submit to having his bag searched (Tr. 51). Although law enforcement officials are not required to inform criminal suspects of their right to refuse consent to a search, 'knowledge of the right to refuse consent is one factor to be taken into account." *Worley, supra* at 386-86 *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Here Mr. Napper testified that he did not believe that he could just walk away from the officers. (Tr. 152).

Every action taken by Officer Alvardo was done to get into Mr. Napper's bag. Officer Alvarado testified that the whole purpose of approaching Mr. Napper was to get

2

into the bag that Mr. Napper had with him. (Tr. 49). Officer Alvardo also acknowledged that the questions he asked Mr. Napper were to distract Mr. Napper as a ploy to get to the ultimate goal of searching the bag. (Tr. 70). Mr. Napper was asked if he was carrying any weapons of mass destruction, guns, drugs and any body parts. (Id). Officer Alvarado testified that he asked that specific question as a way to distract Mr. Napper. The very next question after that one was a request to search the bag. Clearly this type of questioning was to distract Mr. Napper from focusing on the question of the search of his bag in hopes of tripping Mr. Napper up into giving the bag up without thinking. This subtle coercive police technique although not outright coercive should also be taken into account in determining the issue of consent. See, *Worley, supra* at 386, fn.10.

Finally, Mr. Napper did not take any additional actions which would indicate free and voluntary consent. This is a factor to consider. *See Worley, supra* at 386 ("Worley did not assist the officers in their search, nor did he make any additional statements which would indicate free and voluntary consent)." Mr. Napper did not try to strike up a conversation with either officer but only responded to their questions. He did not admit that he had anything in his bag or on his person for which police were looking for. He did not offer up what he had in his bag or where in the bag the items would be found.

Mr. Napper's responses to Officer Alvarado indicated a consistent desire to not cooperate. (Tr. 47-49, 141, 123). When asked if he just came off the bus he answered no (Id). When asked what he was doing on the platform area he stated that he was waiting for someone. (Id). Mr. Napper did not respond when he was questioned as to why he was not waiting in the station. (Id). When asked where he lived he only gave an address of 16th and E, rather than the full complete address. (Id). Therefore, when he was asked by

3

Officer Alvardo if the officer could search his bag he did not answer "yes" because he did not want the officer to search his bag, he knew he had items in his bag which the officers were looking for. (Tr. 142, 153). But he felt he had "no other choice" at that point but to hand over the bag. (Tr. 142). Further, Officer Alvarado did not just ask for the bag but Mr. Napper saw him gesture to take it from him. (Tr. 142-143) Therefore, just like in *Worley*, Mr. Napper's will was overborne, and he acquiesced to the officer's show of authority rather than give an unequivocal voluntary consent to search.

## II.     Application of *United States v. Gregory Stewart*, 05-159 (PLF)

Officer McFadden was the key government witness in the *Stewart* case. It was he who approached the defendant, Mr. Stewart, interacted with Mr. Stewart and sought to search Mr. Stewart. A second officer, Officer Murphy, had a lesser role. Therefore, the findings by Judge Friedman as to Officer McFadden's testimony as well as the outcome of that case should be considered in assessing Officer McFadden's testimony in this case.

Although, Judge Friedman never specifically stated on the record that he found Officer McFadden's testimony "not credible," he did not give the testimony greater weight than the defendant's testimony. Had he done so, the outcome in the *Stewart* case would have been different. Rather Judge Friedman, identifying that "in this particular case, unlike some, there is a credibility contest," (Stewart Tr. 74), he tipped the scale in favor of the defendant over the testimony of Officer McFadden. (Stewart Tr. 80-81) and did state on the record that Officer McFadden's testimony had "an illogic to it." (Stewart, Tr. 82).[1]

---

[1] This statement in and of itself indicates that Judge Friedman found Officer McFadden's testimony incredible, even if Judge Friedman did not specifically use the word "credible."

The government is correct in stating that Judge Friedman found a conflict between the officers' and defendant's account. The same is true in this case. Both the defendant and the officers' testimony are conflicting regarding the issue of consent. The government is incorrect in asserting that in the *Stewart* case there was no corroborating evidence. Two police officers testified in that case. Judge Friedman found that the second officer's testimony was introduced "to corroborate" the testimony of Officer McFadden. (Stewart Tr. 79). Nevertheless, taking into account the corroboration, because of the conflicts, the logic and credibility of the defendant and the "illogic to what the officer said" (Stewart Tr. 82), Judge Friedman found that the government did not meet its burden and suppressed the evidence.

Just like the *Stewart* case, there is an illogic to the assertion that Mr. Napper consented to the search of his bag. As stated above, Mr. Napper's answers to police questions showed that he was not cooperating with them. He knew that he had items that they were looking for, he did not want them to find those items and therefore, he did not want them to search his bag. However, it was because he believed that he had no choice but to turn over the bag that he did so. He was both verbally asked for his bag as well as instructed to through the officer's hand gestures.

The government seeks to have the court ignore the findings in the *Stewart* case because in the case at hand, another officer, Officer Alvarado basically heard and saw exactly the same things that Officer McFadden testified too. Nevertheless, Officer McFadden testified under oath in the *Stewart* case in a factual setting extremely similar to the one in this case and therefore, the *Stewart* case cannot summarily be ignored. His testimony in that case was given less than 5 months earlier than his testimony in this case.

Further, both officers in this case did not testify exactly the same as the government would seek to have one believe. These inconsistencies should be considered in assessing credibility as well as the stake the officers have in the outcome of this case. When the officers were asked questions about whether or not they reviewed and discussed together any police reports, the officers had different things to say. According to Officer McFadden he discussed the police paper work and the narrative of the PD 163 with Officer Alvarado (Tr 86, 105). While Officer Alvarado unequivocally stated that he did not review the PD 163 form at all with Officer McFadden (Tr. 30). This line of questioning apparently was unexpected to them and therefore, they did not prepare for it. Their consistencies as to what occurred on August 4, 2005, can be accounted for because they both reviewed the same police paper work regarding police accounts of the events in question.[2]

Therefore, similarly to the Stewart case, there is a conflict in the testimony of the defendant and the police officers, there is corroboration between the two officers' testimony, there is a logic to the defendant's account of what occurred and an illogic to the police officers' version, and the same high burden on the government exists in this case as well. The Court should suppress the evidence in this case as occurred in the *Stewart* case.

### III. Conclusion

It is the government that bears the burden of proving that consent was given and

---

[2] The police officers did not testify the same regarding with which hand Officer Alvarado grabbed Mr. Napper's bag. Officer Alvarado testified that he took the bag with his left hand (Tr. 18), while Officer McFadden testified it was grabbed by Officer Alvarado with both hands (Tr. 98). This information was not contained in the police report and the officers had to rely on their own memories or lack thereof.

that it was given voluntarily. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The government has not their burden and therefore, Mr. Napper moves this Court suppress the evidence seized from his bag and his person.

Respectfully submitted,

_____
Elita C. Amato, Bar # 44279
1211 Conn. Ave., N.W.,
Suite 400
Washington, D.C.  20036
(202) 223-3210
Counsel for Napper

## CERTIFICATE OF SERVICE

I **CERTIFY** that on this 11th *day of April 2006*, the foregoing electronically served upon the following attorney:

Denise M. Clark, Esq.
Assistant United States Attorney
Office of the United States Attorney
555 4th Street, N.W.
Washington, D.C.  20530

_____
Elita C. Amato