UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 05-366 (JGP) |
| v. | Judge John G. Penn |
| DARICK NAPPER,<br>         Defendant. | Hearing Date: October 18, 2006 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**BACKGROUND**

On April 1, 2005, Darick Napper and Lamarr Pittman drove from Washington, D.C. to North Carolina. While enroute to North Carolina, the two discussed the fact that Ms. Pittman would purchase a firearm for Mr. Napper because Mr. Napper was a convicted felon. On April 2, 2005, Ms. Pittman and Mr. Napper visited a pawn shop in Rocky Mount, North Carolina where Mr. Napper showed Ms. Pittman the two firearms he wanted to purchase. Mr. Napper whispered questions for Ms. Pittman to ask the salesperson and asked several additional questions of the salesperson himself. Mr. Napper then left the store. Ms. Pittman completed the necessary firearm purchase paperwork, in which she falsely indicated that she was not buying the firearms on behalf of anyone else. Ms. Pittman then purchased the firearms and two boxes of ammunition using money supplied by Mr. Napper. On April 3, 2005, Ms. Pittman drove Mr. Napper to an apartment building in Washington, D.C. When they arrived, Mr. Napper removed the guns and ammunition from the trunk and took them inside an apartment.

A few weeks later, Mr. Napper and Ms. Pittman drove back down to North Carolina. On April 23, 2005, they visited a pawn shop in Spring Lake, North Carolina where Ms. Pittman

purchased a rifle at Mr. Napper's request using money Mr. Napper supplied.  Again, Ms. Pittman completed firearms purchase paperwork in which she falsely indicated that she was not buying the firearm on behalf of anyone else.  The next day, Ms. Pittman and Mr. Napper returned to D.C.  Ms. Pittman dropped Mr. Napper off at the home of one of his friends.  Mr. Napper removed the rifle from the car and took it into his friend's home.

On August 4, 2005 at approximately 2:20 p.m., members of the Metropolitan Police Department's Drug Interdiction Unit were conducting interviews at the Greyhound Bus Station, located at 1055 First Street, Northeast, Washington, D.C. when they saw defendant Darick Napper, exit a newly-arrived bus.  Defendant was observed walking around the outside of the terminal.  One of the plain-clothed officers, Erick Alvarado, approached defendant, identified himself as an officer and asked to speak with defendant.  Defendant spoke with the officer.  After a brief conversation in which Officer Alvarado asked to search the bag defendant was carrying, defendant handed his bag to Officer Alvarado.  Officer Alvarado placed the bag on the ground and began searching it.  During the search, he discovered a box of ammunition.  Officer Alvarado alerted Officer McFadden to arrest defendant.  While reaching for defendant, Officer McFadden felt a gun in defendant's waistband and informed Officer Alvarado that defendant had a gun on his person.  At that point, Officer Alvarado assisted Officer McFadden in placing defendant under arrest.  Subsequent to defendant's arrest, the officers searched him and recovered (1) a Ruger .9 mm semi-automatic pistol with nine rounds of .380 caliber ammunition in the chamber and one round in the chamber in his waistband; (2) a canvass holster with a magazine containing ten rounds of .9 mm ammunition in his waistband; (3) two medium bags, one containing 31 small ziplocks of a rock like substance, and the other containing 12 small ziplocks of a rock like substance in defendant's left cargo pants pocket; (4) one

ziplock bag containing a plant material, which later field tested positive for THC; and (5) $591.72 from defendant's left front pants pocket and (6) four rounds of .9 mm ammunition from defendant's right front pants pocket. The search of defendant's bag uncovered (1) a High Point .380 caliber pistol with eight rounds in the magazine; (2) a box containing 37 rounds of .9 mm ammunition; (3) one body armor vest; (4) a digital scale; (5) 23 small ziplock bags and (6) two black masks. The rocklike substance found in defendant's pants was later analyzed by the Drug Enforcement Laboratory. The analysis revealed that defendant had 7.5 grams of cocaine base.

On March 24, 2006, defendant was arraigned on a five count Superceding Indictment charging him with (1) Conspiracy, in violation of 18 U.S.C. § 371; (2) Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); (3) Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a); (4) Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1); and (5) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). On August 8, 2006, defendant pled guilty to Counts One, Two and Five of the Indictment (Conspiracy, Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, and Unlawful Possession of a Firearm and Ammunition).

Based on his conduct in the instant case, defendant's base offense level is 24. See United States Sentencing Commission Guidelines Manual § 2K2.1 (a)(4)(A). Because defendant possessed the firearm and ammunition with the knowledge, intent or reason to believe that they would be used in connection with his selling of narcotics, defendant's base offense level should be increased by four levels. See § 2K2.1(b)(5). Defendant's intent is evidenced by the fact that he had the narcotics, a

firearm and a great deal of ammunition in close proximity to one another. Defendant has accepted responsibility for his conduct pursuant to § 3E1.1, and thus, he is entitled to a three level adjustment, reducing his offense level to 25. Defendant has eight criminal history points, placing him in criminal history category IV. Accordingly, defendant's Sentencing Guideline range is 84 to 105 months of imprisonment.

The government recommends that the Court impose a sentence of 105 months. Such a sentence is warranted by the seriousness of the conduct defendant engaged in and defendant's criminal history.

## ARGUMENT

Following United States v. Booker, 125 S. Ct. 738, (2005), the Court is no longer required to impose a Guidelines sentence in all cases, and its sentencing decision will be reviewed for reasonableness. Booker directs sentencing courts to fashion sentences that are consistent with the factors set forth in 18 U.S.C. § 3553(a), and that can best be done by adhering closely to the sentences derived from the Guidelines. It is the very purpose of the Guidelines to assist judges in meeting the sentencing goals of Section 3553(a). In the government's view, the most reasonable sentence in this case would be a sentence within the range calculated under the Sentencing Guidelines for an offense level of 25, criminal history category III. As discussed below, there is nothing about the circumstances of this case which justify a further reduction beyond offense level 25, criminal history category IV.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines,

consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

    **A.**    **The Guideline sentence is reasonable in light of the**

          **Defendant's personal characteristics and circumstances.**

In this case, consideration of all the factors set forth in Section 3553(a), including defendant's personal characteristics and circumstances, support the conclusion that a Guideline sentence is reasonable, and that defendant Napper should be sentenced within the applicable range of 84 to 105 months.

First, the offenses of conviction are incredibly serious ones. Although defendant was a convicted felon[1] and was on supervised release in that case, he concocted a plan to obtain at least four weapons and a great deal of ammunition. He convinced his girlfriend at the time to buy three weapons in her name, on two separate occasions in April 2005 when they were visiting North Carolina. He selected the weapons and ammunition he wanted, asked questions of the salesperson

---

[1] Defendant was convicted of Attempted Possession with Intent to Distribute Cocaine in the District of Columbia Superior Court case no. F-1077-01 on June 25, 2001.

and then provided the girlfriend with money to purchase the items. He then had his girlfriend drive him back to D.C. Defendant was in possession of one of the guns when the police encountered him on August 4, 2005 at the Greyhound bus terminal. In addition to that gun, defendant had a second weapon, various types of ammunition, 33 ziplocks of crack cocaine, a ziplock of marijuana, a digital scale, body armour, empty ziplock bags, and two ski masks. Based on the drug packaging, the scale and the amount of crack cocaine on him, it is evident that defendant was in the drug dealing business on that date. But what is equally apparent is that he is the worst kind of drug dealer. Indeed, it was not enough to just inject the poison of crack cocaine into our community by selling it. Defendant was also adding to the violence that has so plagued this city. His arsenal of weapons and ammunition, and his body armour and two ski masks (in the middle of summer) indicates that he was not just protecting his turf, as some drug dealers claim, but that he had an affirmative intent and was equipped to do violent and destructive acts in our community. Any sentence the Court imposes should reflect the seriousness of the totality of defendant's conduct in this case.

Defendant's criminal history also warrants a sentence at the high end of the applicable Sentencing Guideline range. At the time, defendant engaged in this conduct he was on supervised stemming from a conviction for Attempted Possession with Intent to Distribute Cocaine (D.C. case no. F-1077-01) and was on pre-trial release for the same drug charge (D.C. case no. F 3737-05). (He has since pleaded guilty to that charge.) Three serious felony drug trafficking convictions (including this one) within a four year period demonstrate a very significant criminal history and warrant 105 months of incarceration.

In addition, any sentence this Court imposes should provide adequate deterrence and respect for the law under Section 3553 (a)(2). Defendant's criminal history demonstrates that defendants

in this jurisdiction, particularly those who have had contact with the Superior Court system, are not deterred from engaging in criminal conduct because they perceive the penalties for their conduct to be so minimal. The Court should impose a sentence that is severe enough that would-be criminals will know that gun possession and drug distribution are serious crimes which will not be tolerated in the District of Columbia.

Further, a sentence at the high end of the applicable guidelines is necessary to protect the citizens of D.C. from further crimes from the defendant. Defendant's first conviction for attempted possession with intent to distribute cocaine apparently taught him nothing. Indeed, he was revoked several times while on probation and supervised release. Additionally, while on supervised release in that case, he committed the exact same crime again in July 2, 2005. One month later, he is stopped at the Greyhound Bus station in this case with two guns, drugs, ammunition, ski masks and body armour. Defendant's conduct has shown that he is steadfast in continuing in his criminal lifestyle and that his criminal conduct is only escalating. A very long period of incarceration is the only way to stop him and protect the community.

Finally, a 105 month sentence will allow defendant ample time to obtain many services he so apparently needs. Indeed, he will have the time to obtain any needed drug and/or mental health treatment. Also, defendant will have the opportunity to obtain further education and possible job training.

  **B.**  **Conclusion**

For the reasons detailed above, a sentence of 105 months is reasonable and appropriate in this case.

            Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____
Denise M. Clark
Assistant United States Attorney
Federal Major Crimes Section, D.C.  Bar No. 479149
555 4th Street, N.W.  #4840
Washington, DC 20530
Phone: 353-8213
Fax: 353-9414

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served by mail upon the attorney for the defendant, Elita Amato, this \_\_\_\_\_th  day of October, 2006.

_____
Denise M. Clark
Assistant United States Attorney